**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MIA M. BRIDGEMAN,** ) | **CASE NO. 1:18 CV 2481** |
| ) | |
| **Plaintiff,** ) | **JUDGE DAN AARON POLSTER** |
| ) | |
| vs. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| **City of Bedford Heights,** ) | |
| ) | |
| **Defendant.** ) | |

*Pro se* Plaintiff Mia M. Bridgeman brings this action against the City of Bedford Heights ("City") asserting a variety of claims related to her employment with the City. (Doc. #: 1). Also before the Court is Plaintiff's motion to proceed with this matter *in forma pauperis*. (Doc. #: 2). That motion is granted.

For the reasons that follow, this case is dismissed.

**A. Background**

Plaintiff details her claims in an eleven page attachment to the Complaint, which is a combination of narrative and numbered questions with answers (Doc. #: 1-1). Plaintiff alleges that she is an administrative assistant in the Senior/Disabilities office for the City. She was initially hired by the City in February 2008 as a part-time front desk receptionist. Plaintiff claims that she was later promoted to an administrative assistant in the senior department, but paid "almost $2.00 less than the previous employee in November 2011." (*Id*. at 6, ¶ 16-17).

In January 2013, her supervisor was Bill Starkey ("Starkey") (whom Plaintiff describes as a white male) and his title was Senior Coordinator. Starkey took a medical leave and Plaintiff alleges that, during his absence, she performed his job in addition to hers. Ruth Gray ("Gray") was the Director of the Community Center at the time. When Starkey returned in May 2013, he was given other responsibilities outside the senior department and Plaintiff was told to report to Gray. In September 2013, Plaintiff was told that Starkey's former position of Senior Coordinator was being eliminated and alleges that she was required to perform "all the senior department duties alone." (*Id*. at 1). Plaintiff claims that she "was performing the exact same job as my former supervisor whom just happened to be a Caucasian male." (*Id*. at 3, ¶ 1; at 5, ¶ 15).

Plaintiff alleges violations of Title VII of the Civil Rights Act, Equal Pay Act, American with Disabilities Act, and Family and Medical Leave Act in connection with her employment by the City. Plaintiff's claims revolve around Gray, and states that she suffers from manic depression and "had to seek mental and physical treatment due to unfair treatment from Ruth Gray." (*Id*. at 1).

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). She does not attach the charge to the Complaint,[1] but does attach the City's response, which is dated July 28, 2014. (Doc. #: 1-2). According to the City's response, Plaintiff's EEOC charge alleged race (African-American) and gender discrimination under Title VII, disability discrimination under the Americans with Disabilities Act, and denial of equal pay. In her

---

[1] Plaintiff alleges that she filed her EEOC charge on two different dates: November 2013 (Doc. #: 1-1 at 7, ¶ 24) and November 2014 (Doc. #: 1 at 5). The City's response to the charge states that Plaintiff's EEOC charge was filed on May 19, 2014. (Doc. #: 1-2 at 5).

charge, Plaintiff claimed that she assumed Starkey's duties but Mayor Fletcher Burger ("Mayor") and Gray denied her a pay increase and told her that she must perform the duties requested by Gray, that Gray refused to purchase required work supplies, that she is required to use her lunch break for medical appointments for her approved FMLA leave, and that during performance reviews Gray discussed Plaintiff's medications and the medical condition of her husband. (*See id*. at 1).

It is unclear from the Complaint or documents attached thereto what transpired with respect to Plaintiff's EEOC charge after the City's response. Ultimately, Plaintiff withdrew her EEOC charge and the EEOC issued a right to sue letter, both occurring on July 24, 2018. (*See* Doc. #: 1-4).

**B. Standard of Review**

*Pro se* pleadings are held to a less stringent standards than pleadings drafted by lawyers, and must be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). That said, federal district courts are expressly required by 28 U.S.C. § 1915(e)(2)(B) to screen all *in forma pauperis* actions and to dismiss before service any such action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. The standard for dismissal articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) with respect to Fed. R. Civ. P. 12(b)(6) also governs dismissal under § 1915(e)(2)(B) for failure to state a claim. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Therefore, in order to survive scrutiny under § 1915(e)(2)(B), a *pro se* complaint "'must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Id*. (quoting *Iqbal*, 556

U.S. at 678).

Under *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), a plaintiff need not plead the elements of a *prima facie* case of employment discrimination to survive a motion to dismiss, or in this case, a § 1915 screening. That said, *Swierkiewicz* did not change the law of pleading, and "offers no gateway for a plaintiff to side-step the 'plausibility' standard laid out in *Twombly* and *Iqbal*." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448-49 (6th Cir. 2018) (citing *Keys v. Humana, Inc.*, 684 F.3d 605, 609-10 (6th Cir. 2010)). Plaintiff must, therefore, advance facts which, taken as true, plausibly allege that the City is liable for the claimed conduct. *Twombly*, 550 U.S. at 570 (to state a claim for relief plaintiff must allege enough facts to nudge his claim across the line from conceivable to plausible).

**C. Analysis**

**1. Plaintiff's ADA claim is dismissed**

Plaintiff claims that the City violated the Americans with Disabilities Act ("ADA"). Plaintiff does not state under which Title of the ADA she brings this action. Because her claims are related to her employment with the City, the Court infers that she brings this action under Title I.

Under Title I of the ADA, 42 U.S.C. § 12112(a), employers are prohibited from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." Discrimination under the ADA includes taking an adverse action against an otherwise qualified individual "on the basis of disability," and failing to make a reasonable accommodation for an

-4-

employee with a known disability. *See Johnson v. JPMorgan Chase & Co.*, 922 F. Supp. 2d 658, 666 (S.D. Ohio 2013) (quoting 42 U.S.C. §§ 12112(a), 12112(b)(5)(A)). Under the ADA, "disability" means "a physical or mental impairment that substantially limits one or more major life activities" of an individual. 42 U.S.C. § 12102(1)(A).

As an initial matter, Plaintiff denies that she has a disability, but does allege that she has several health issues, including job stress, a car accident in 2013, and serving as a care giver for her disabled husband. (Doc. #: 1-1 at 5, ¶ 10). Plaintiff alleges that she documented all doctor appointments for her husband and herself, but does not allege that she provided the City with any medical documentation of a disability under the ADA. (*See id.* at 5, ¶ 11). Nor does Plaintiff allege that she was discriminated against or denied accommodation with respect her alleged job stress or health issues resulting from the 2013 car accident. In the absence of a disability as defined by the ADA, or discrimination or failure to accommodate on the basis of a perceived disability, Plaintiff fails to state a plausible ADA claim.

Plaintiff also states that she had carpel tunnel and back issues in 2008 through 2010. To the extent that Plaintiff's carpel tunnel and back issues constituted a disability, or that the City regarded her as disabled, Plaintiff fails to plausibly allege that the City violated the ADA by failing provide a reasonable accommodation or otherwise discriminating against her. Indeed, Plaintiff requested certain work equipment in connection with her carpel tunnel and back issues, such as a wrist mouse pad, keyboard, and chair,[2] which she states were provided. (*Id*. at 3, ¶ 2).

Moreover, there are no allegations in the Complaint from which the Court can infer that

---

[2] Plaintiff alleges that Gray attempted to interfere with the fulfillment of her request for a special chair, but the requested chair was provided. (*See* Doc. #: 1-1 at 3, ¶ 2).

Plaintiff administratively exhausted any ADA claim she may have had. A plaintiff seeking to bring an employment discrimination claim under the ADA must first exhaust administrative remedies and, in order to do so, must file a charge of discrimination with the EEOC within 180 or 300 days, depending upon the agency with whom Plaintiff filed her charge. *Hoover v. Timken Co.*, 30 F. App'x 511, 513 (6th Cir. 2002) ("To exhaust administrative remedies under the ADA . . . a plaintiff must file an EEOC charge within 180 days of the alleged discrimination (or with the state agency within 300 days).") (statutory and case citations omitted). "[F]ailure to properly exhaust is an appropriate bases for dismissal of an ADA action." *Jones v. Nat. Essentials, Inc.*, 740 F. App'x 489, 492-93 (6th Cir. 2018) (citations omitted).

Plaintiff does not allege that she administratively exhausted any ADA claim she may have had in 2008 and 2010 with respect to her carpel tunnel and back issues, and the time to do so has expired. With respect to any alleged ADA violations by the City that were timely brought in the 2014 EEOC charge, Plaintiff withdrew that charge before the EEOC reached a determination. (*See* Doc. #: 1-4 at 2). "Numerous courts have held that a claimant who abandons or withdraws his or her claim before the EEOC has reached a determination cannot be deemed to have exhausted his administrative remedies." *Sain v. Am. Red Cross*, 233 F. Supp. 2d 923, 931 (S.D. Ohio 2002) (collecting cases); *Williams v. United States Postal Serv.*, No. 1:08-CV-892-TSH, 2010 WL 11538139, at *3 (S.D. Ohio Sept. 8, 2010) (same) (collecting cases). Therefore, any ADA claims that were timely filed by Plaintiff in the 2014 EEOC charge, those claims are dismissed for failure to exhaust administrative remedies because Plaintiff withdrew her charge. To the extent that Plaintiff alleges ADA discrimination claims against the City for conduct occurring after Plaintiff filed her 2014 EEOC charge but before she

filed the instant action, those claims are also dismissed as Plaintiff does not allege that any such claims have been administratively exhausted. *See Jones,* 740 F. App'x at 492-93.

For all of the foregoing reasons, Plaintiff's ADA claims are dismissed in their entirety pursuant to § 1915(e)(2)(B) for failure to state a plausible claim upon which relief can be granted.

### 2. Plaintiff's Title VII claim is dismissed

Plaintiff claims that she is subjected to discrimination, harassment, retaliation, and a hostile work environment by Gray in violation of Title VII. Title VII prohibits discrimination by an employer on the basis of race and sex, among other classifications. 42 U.S.C. § 2000e *et seq*.

As an initial matter, Plaintiff's Title VII claims are barred for failure to exhaust administrative remedies before bringing her Title VII claims to federal court. *Williams v. Nw. Airlines, Inc.*, 53 F. App'x 350, 351 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action." (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)) (further citation omitted). Under Title VII, a plaintiff has up to 180 days, or in a deferral state such as Ohio, 300 days, to file a charge of discrimination with the EEOC. *See* 42 U.S.C. 2000e-5(e)(1). As with Plaintiff's ADA claim, alleged Title VII discrimination claims occurring before Plaintiff filed her EEOC charge are barred by the statute of limitations or are unexhausted because she withdrew her 2014 EEOC charge and, to the extent she alleges Title VII claims occurring between the time she filed her EEOC charge and this action, those claims are also dismissed for failure to exhaust.

In addition, Plaintiff fails to state a plausible Title VII claim upon which relief may be granted. To the extent that Plaintiff is asserting a Title VII discrimination claim based on race and sex as to her pay, the plausibility of that claim will be addressed with Plaintiff's Equal Pay Act claim. Unequal pay claims based on race are brought pursuant to Title VII, rather than the Equal Pay Act, which only addresses gender based pay differences. But the analysis of an unequal pay claim is "'is essentially the same under both the Equal Pay Act and Title VII.'" *See Pingle v. Richmond Heights Local Sch. Dist. Bd. of Educ.*, No. 1:12-CV-2892, 2015 WL 6501449, at *13 (N.D. Ohio Oct. 27, 2015) (quoting *Odomes v. Nucare, Inc.* 653 F.2d 246, 250 (6th Cir. 1981) (citations omitted); *Kline v. Portage Cnty. Bd. of Com'rs,* 5 F. Supp. 3d 902, 920 (N.D. Ohio 2014) (citations omitted)).

To state a Title VII race or gender based hostile work environment claim, Plaintiff must be subject to unwelcome harassment based on Plaintiff's race or gender which unreasonably interfered with Plaintiff's performance by creating an intimidating, hostile, or offensive work environment, and the City failed to take reasonable steps to prevent and correct the harassment. *Williams v. Gen'l Motors Corp.*, 187 F.3d 553, 561 (6th Cir. 1999); *Humphries v. Consolidated Grain and Barge Co.*, 412 F. Supp. 2d 763, 767 (S. D. Ohio 2005) (citing *Williams*, 187 F.3d at 560-61). Plaintiff must assert sufficient facts to create an inference that, but for her sex or race, "the [harassing] behavior would not have been undertaken." *See Mast v. IMCO Recycling on Ohio, Inc*., 58 F. App'x 116, 117-118 (6th Cir. 2003) (citations omitted). Plaintiff alleges a number of incidents which she characterizes as "unfair treatment by Ruth Gray" and evidence of a hostile work environment, retaliation, and bullying, such as being expected to work without proper equipment, rule changes directed at Plaintiff and her family, not making time to talk with

Plaintiff about her department, work requests with unrealistic turnaround times, and discussing Plaintiff with other employees where Gray's comments could be overheard by others. (Doc. #: 1-1 at 1-2). Even assuming these allegations are true, Plaintiff does not claim, nor can the Court infer, that Gray's actions were undertaken because of Plaintiff's race and gender. Title VII protects employees against discrimination based on race and sex, not against unfair treatment, unwise decisions, or favoritism by an employer that is not based upon a prohibited classification. *See McDaniels v. Plymouth-Canton Cmty. Sch.*, No. 17-2412, 2018 WL 5734695, at *7 (6th Cir. Nov. 1, 2018) (citations omitted); *Briggs v. Univ. of Detroit-Mercy*, 22 F. Supp. 3d 798, 809-10 (E.D. Mich. 2014) (collecting cases), *aff'd,* 611 F. App'x 865 (6th Cir. 2015); *Soehner v. Time Warner Cable, Inc.*, No. 1:08-CV-166, 2009 WL 3855176, at *9 (S.D. Ohio Nov. 16, 2009) (citations omitted). Plaintiff fails to state a plausible Title VII race and gender harassment and hostile work environment claim upon which relief may be granted.

Plaintiff also alleges that Gray retaliated against her because "I have no problem with addressing issues that I feel are unfair to me." (Doc. #: 1-1 at 8, ¶ 25). To state a claim for Title VII retaliation, Plaintiff must have engaged in protected activity under Title VII of which Gray was aware, and Gray took an adverse employment action against Plaintiff because of the protected activity. *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013) (citing *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 995-96 (6th Cir. 2009)).

Some examples of alleged unfair treatment by Gray include requests that City employees write statements against Plaintiff, and telling Plaintiff what she could and could not wear on dress down day. But Plaintiff does not claim that her complaints to Gray regarding the laundry list of unfair treatment alleged in the Complaint were tethered to her race and gender and,

therefore, do not constitute protected activity under Title VII. *Weaver v. Ohio State Univ.*, 71 F. Supp. 2d 789, 793-94 (S.D. Ohio 1998) ("Complaints concerning unfair treatment in general which do not specifically address discrimination are insufficient to constitute protected activity.") (citation omitted), *aff'd,* 194 F.3d 1315 (6th Cir. 1999).

Indeed, Plaintiff claims that she has not engaged in protected activity. (Doc. #: 1-1 at 8, ¶ 27). Regardless of whether Plaintiff recognizes that her 2014 EEOC charge constitutes protected activity under Title VII, Plaintiff simply does not allege that Gray or the City retaliated against her because she filed a discrimination charge with the EEOC. The Court's obligation to liberally construe *pro se* pleadings does not require the Court to conjure factual allegations or construct legal claims on Plaintiff's behalf. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citing *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)). Plaintiff generally alleges that Gray has constantly harassed and retaliated against her "from 2008 to present day." (Doc. #: 1-1 at 4-5, ¶ 9). Where Plaintiff supplies dates for Gray's alleged retaliatory conduct, that conduct occurred in October 2013 or earlier and, therefore, cannot constitute retaliation for Plaintiff's EEOC charge, which was filed after October 2013. (*See id*. at 1-2).

On September 11, 2013, Plaintiff complained to Gray and the Mayor that she was performing the same job as Starkey – a white male – but the City's pay scale was not being properly applied to her. (*See id*. at 1; at 6, ¶ 15). To the extent that Plaintiff's complaint concerning pay was based upon race and gender, she engaged in protected activity under Title VII. Plaintiff alleges Gray engaged in certain conduct against Plaintiff later in September and in

October 2013, which Plaintiff characterizes as retaliation and unfair treatment. (*See id.* at 1-2). But even if Gray's actions could be construed as an adverse employment action undertaken because of Plaintiff's complaint concerning compensation, she failed to exhaust her administrative remedies before bringing this action to federal court.

For all of these reasons, Plaintiff fails to state a plausible Title VII claim for harassment, hostile environment, and retaliation upon which relief can be granted, and those claims are dismissed pursuant to § 1915(e)(2)(B).

### 3. Plaintiff's Equal Pay Act/Title VII pay discrimination claims are dismissed

In order to allege an Equal Pay Act claim pursuant to 29 U.S.C. § 206(d), Plaintiff must claim that she performed a job that required substantially equal skill and effort, but was paid less than similarly situated employees of the opposite sex. *See Corning Glassworks v. Brennan*, 417 U.S. 188, 195 (1974); *Balmer v. HCA, Inc.*, 423 F.3d 606, 611-12 (6th Cir. 2005). Plaintiff alleges that after Starkey's medical leave in 2013, the City determined that his former position of Senior Coordinator was no longer needed and Plaintiff, as she frames it, was "responsible for running the senior department alone[.]" (Doc. #: 1-1 at 1).

As an initial matter, Plaintiff's 2013 Equal Pay Act claim is barred by the statute of limitations. The limitations period for an Equal Pay Act claim is two years, unless the violation is willful, in which case the limitations period is three years. *Carey v. Foley & Lardner LLP*, 577 F. App'x 573, 576 (6th Cir. 2014) (citing 29 U.S.C. § 255(a)). The statute of limitations on Plaintiff's claim accruing in 2013 expired long before this action was filed. To the extent that Plaintiff's Equal Pay Act claim is not barred by the statute of limitations or represents a

-11-

continuing violation, those claims are dismissed for failure to state a plausible claim for relief.

Resolution of an Equal Pay Act claim does not depend upon job titles, but upon actual job requirements. "The pertinent inquiry [in an Equal Pay Act claim] must focus on the actual requirements and performance of the jobs in question." *Conti v. Universal Enter., Inc.*, 50 F. App'x 690, 697 (6th Cir. 2002); *see also E.E.O.C. v. City Council of City of Cleveland*, 875 F.2d 863 (Table) (6th Cir. 1989) ("Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job.") (citations omitted). In addition, differences in education and experience may legitimately justify differences in pay. *See Finch v. Xavier Univ.*, 689 F. Supp. 2d 955, 968 (S.D. Ohio 2010) (citing *Balmer v. HCA, Inc.,* 423 F.3d 606, 612 (6th Cir. 2005)).

Plaintiff generally alleges that she is running the senior department and lists some of those duties (Doc. 1-1 at 6, ¶ 18), but she does not separately list or describe the specific requirements, duties, and responsibilities of the former Senior Coordinator position, and her duties and responsibilities in the senior department. Nor does she make any factual allegations concerning her and Starkey's relative education and experience relevant to the qualification for the Senior Coordinator position. And to the extent that Plaintiff's retaliation claim is based upon her Equal Pay Act claim, while she alleges that Gray's unfair treatment is ongoing, she does not provide dates for any such conduct after October 2013, and the Equal Pay Act's statute of limitations for a retaliation claim expired years before this case was filed.

The Court is not required to conjure factual allegations on Plaintiff's behalf or accept as true her conclusory legal claims that lack specific factual allegations necessary to state a claim.

*Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016) (citing *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). To the extent that Plaintiff's Equal Pay Act claim is not barred by the statute of limitations, she fails to allege a plausible Equal Pay Act claim upon which relief can be granted, and that claim is dismissed pursuant to § 1915(e)(2)(B). To the extent that Plaintiff is alleging pay discrimination based upon race or gender under Title VII, for the same reasons discussed above, those claims are also dismissed for failure to state a plausible claim upon which relief may be granted.

### 4. Plaintiff's FMLA claim is dismissed

The Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, provides for unpaid leave of up to twelve weeks in a twelve-month period for employees with a serious medical condition. 29 U.S.C. § 2612(a)(1). "To bring a successful claim under this Act, a plaintiff must show (1) that she engaged in conduct protected by the Act, (2) that the defendant was aware of this exercise of protected rights, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005) (citing *Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 314 (6th Cir. 2001)).

In support of her FMLA claim, Plaintiff alleges that she was directed by her supervisor Starkey to obtain and complete FMLA forms, which she did. After Starkey ceased being her supervisor in 2013, Plaintiff alleges that Gray questioned the forms, but the "FMLA was not violated per say [sic] just the way Ruth handled the request it seems like she received the

-13-

paperwork and assumed it was not intermediate [sic] and took it as if I was requesting a leave at that time and she was unaware[.]" (Doc. #: 1-1 at 3, ¶ 3). Plaintiff further alleges that her FMLA requests were "denied" when her work hours were changed from 8:30 a.m. - 5:00 p.m. to 9:00 a.m. - 5:00 p.m., and Gray questioned Plaintiff's early departure to use her lunch hour at the end of the day to take care of her husband. But Plaintiff states that after she explained to Gray that Starkey had allowed her to use her lunch hour at the end of her shift to take care of her husband, Gray permitted her to continue to do so, indicating that after Starkey returned from medical leave, Gray would rethink the situation. (*See id.* at 3-4, ¶ 4).

While the Court is required to liberally construe the Complaint and view the allegations therein in a light most favorable to the Plaintiff, the Court is not required to make unwarranted inferences or accept Plaintiff's legal conclusions. *See Gregory v. Shelby Cty., Tenn.,* 220 F.3d 433, 446 (6th Cir. 2000) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Construing Plaintiff's allegations liberally and in her favor, this Court cannot infer that Plaintiff was denied FMLA leave or otherwise states a plausible FMLA claim.

Furthermore, unlike Title VII and the ADA, the FMLA does not require employees to exhaust administrative remedies before proceeding in federal court. *See Algie v. N. Ky. Univ.* 456 F. App'x 514, 520 (6th Cir. 2012). A plaintiff asserting an FMLA claim must bring the action within two years after the date of the last alleged violation, or three years if the violation is "willful." 29 U.S.C. §§ 2617(c)(1) (c)(2).

Construing Plaintiff's allegations liberally and in her favor, it appears that the City's alleged FMLA violations took place in 2013, around the time Starkey took his medical leave.

Assuming the longest statute of limitations possible under the FMLA for the purpose of this analysis, Plaintiff was required to file her FMLA claim in 2016 – years before this action was filed. In addition to failing to state a plausible FMLA claim, any such claim is also barred by the statute of limitations. Plaintiff's FMLA claim is dismissed pursuant to § 1915(e)(2)(B).

**D. Conclusion**

For all of the foregoing reasons, this action is dismissed in its entirely pursuant to 28 U.S.C. § 1915(e). Plaintiff's motion to proceed *in forma pauperis* is granted.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[3]

**IT IS SO ORDERED**.

    s*/Dan Aaron Polster*   4/3/2019
**DAN AARON POLSTER**
**UNITED STATES DISTRICT JUDGE**

---

[3] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.